# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 308 | **DATE** | 2/05/04 |
| **CASE TITLE** | United States v. Shannon Fitzgerald | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Probation Department is ordered to prepare a revised Presentence Investigation Report on or before February 13, 2004. The matter is set for status on February 17, 2004 at 9:30 a.m.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 06 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 48 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 CR 308 |
| v. ) | |
| ) | Judge John W. Darrah |
| SHANNON FITZGERALD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On June 24, 2003, Defendant entered a plea of guilty to a charge that Defendant, beginning in November 2001 and continuing to May 31, 2002, conspired with Co-Defendant, Chad Raby, and with others known and unknown to the Grand Jury, to knowingly and intentionally possess with the intent to distribute a controlled substance, namely, tablets containing 3, 4 Methylenedioxymethamphetamine (MDMA), a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); all in violation of 21 U.S.C. § 846. Presently before the Court are issues regarding Defendant's total offense level under the United States Sentencing Guidelines ("U.S.S.G.").

## ANALYSIS

The parties agree to the application of the guidelines in the Presentence Investigation Report, with the exception of the calculation of the base offense level and a reduction for role in the offense. Defendant also filed a motion for a downward departure.

48

*Base Offense Level*

Under the 2002 version of the Sentencing Guidelines and the Typical Weight Per Unit Table contained in Application Note 11 of § 2D1.1, the typical weight of both one pill of MDMA and 3, 4 Methylenedioxyamphetamine ("MDA") is 250 mg. However, the 2002 version of the Guidelines marked the first time that MDMA was specifically listed in this table, which is to be utilized if the number of pills or doses is known but the actual weight of the controlled substance is unknown.

The 2001 Typical Weight Per Unit Table contained in Application Note 11 of § 2D1.1 of the 2001 version of the Sentencing Guidelines does not include MDMA. Rather, the Drug Equivalency Table contained in Application Note 10 of § 2D1.1 treats MDMA and MDA equally. MDA is chemically similar to MDMA, and each substance produces a similar effect of the central nervous system. In addition, Amendment 609 of the 2001 guidelines, which addressed the directive of the Ecstasy Anti-Proliferation Act of 2000, directed the Sentencing Commission to increase guideline penalties for any "controlled substance that is marketed as Ecstasy and that has either a chemical structure similar to MDMA or an effect on the central nervous system substantially similar to or greater than MDMA." Under the 2001 Typical Weight Per Unit Table, the typical weight of one pill of MDA is 100 mg.

The 2002 version of the Sentencing Guidelines went into effect on November 1, 2002. The Defendant's offense conduct was completed as of May 31, 2002. Both parties agree that 810 pills are attributed to Defendant's conduct.

If the 2002 version of the Sentencing Guidelines is applied, the base level offense is 26. If the 2001 version of the Sentencing Guidelines is applied, the base level offense is 20.

The Defendant and the Presentence Investigation Report, in computing the base level offense at 20, rely on the 2001 version of the Sentencing Guidelines, which was in effect at the time the conspiracy was completed. The 2002 version of the Sentencing Guidelines was in effect at the time of the sentencing. The Government, in arguing for a base level offense of 26, claims that it is not clear that MDMA would have been assigned a typical weight per dose of 100 mg had it been included in the 2001 Guidelines.

The Sentencing Guidelines which are in effect at the time of sentencing apply so long as it does not result in a violation of the *ex post facto* clause of the United States Constitution. U.S. Sentencing Guidelines Manual §§ 1B1.11(a)-(b)(1). If the defendant is subject to increased punishment by using the Guidelines in effect at the time of sentencing instead of the Guidelines in effect at the date the offense of conviction was committed, the increased punishment would violate the *ex post facto* clause. *See, e.g., United States v. Hall*, 212 F.3d 1016, 1023 (7th Cir. 2000).

Here, Defendant would be subjected to an increased punishment by using the 2002 version of the Sentencing Guidelines; the base offense level would be increased from 20 to 26. The Government has not provided support for the proposition that the 2001 version of the Guidelines would not have assigned a typical weight of 100 mg. To the contrary, MDMA is treated equally to MDA in both the Typical Weight Per Unit Table in the 2002 version of the Sentencing Guidelines and the Drug Equivalency Table in the 2001 version. Accordingly, the 2001 version of the Sentencing Guidelines will be used to compute Defendant's sentence.

The Government, pursuant to Application Note 11 to U.S.S.G. § 2D1.1, also asserts that because a more reliable estimate of the total weight exists, the Typical Weight Per Unit Table

should be disregarded. The actual MDMA pills attributed to Defendant are not available for determination of their actual weight. However, the Government contends reliable evidence exists from other pills, which were acquired from Defendant's supplier, John Michael O'Leary, and came from the same supplier in Belgium. These MDMA pills acquired by the Government were not weighed individually but, rather, tested in batches. The average weight per batch ranged from 218 mg to 313 mg. No range of weight is available for all the pills in the aggregate.

Under the Government's theory, the unrecovered MDMA pills that are attributed to the Defendant would presumably have the same average weight of as the pills acquired by the Government from Defendant's source, 291 mg (the average between the 218 mg and 313 mg batches).

However, because of the wide range of weight of the pills per batch (up to 95 mg), and no average overall weight of the pills, this method cannot be said to be a "more reliable estimate of the total weight" of the unrecovered pills involved in the offense for which Defendant has been convicted.

Therefore, the assigned typical weight of 100 mg, as calculated above, shall be applied to determine the offense level for the 810 pills. This analysis is consistent with the recommendation of the Probation Department, as set out in the Presentence Investigation Report. Therefore, the base offense level for the MDMA pills is found to be 20.

*Role in the Offense*

Defendant's involvement in the offense was limited to accompanying Raby on their attempted purchase of one shipment of MDMA pills. Section 3B1.2 of the guidelines permits a decrease in the offense level if the defendant was a minor or minimal participant in the criminal

4

activity. In conspiracy cases, an offense level reduction under § 3B1.2 is only appropriate if the defendant was substantially less culpable than the conspiracy's other participants. This inquiry is a highly factual determination. *United States v. Montenegro*, 231 F.3d 389, 395-96 (7th Cir. 2000).

Application Note 4 to § 3B1.2 states that a minimal participant covers defendants who are plainly the least culpable of those involved in the conduct of a group. The defendant's lack of knowledge or understanding of the scope of a conspiracy and others' activities is indicative of a role of a minimal participant. Application Note 5 states a minor participant "is less culpable than most other participants, but whose role could not be described as minimal."

Here, although Defendant loaned a portion of the money used to purchase the MDMA pills and her vehicle was used in obtaining the pills, she was substantially less culpable than Raby in the execution of the conspiracy. Unlike her co-defendant, Defendant had never dealt MDMA before meeting Raby. Defendant had no knowledge of or access to a source who supplied the drugs to Raby, and Raby had acquired this source for the drugs before meeting Defendant. Raby, without any assistance from Defendant, made all the arrangements for the time and place of the purchase as well as for the amount of MDMA pills and the price. Raby, also without any assistance from Defendant, arranged all the details concerning the pick-up of MDMA from his source in Chicago, with whom he had exclusive contact. Pursuant to a stipulation between the Government and the defense, as more fully set out below, Raby would have testified that he and Defendant were not equals in the conspiracy and that Defendant was far less culpable than he.

Moreover, only Raby received the profits from the sales of the MDMA he obtained from the source. In contrast, Defendant was to be reimbursed later from the amount she loaned Raby and only received MDMA pills for her personal use. Finally, Raby, alone, took steps to conceal the drug activities from law enforcement. Under these circumstances, Defendant's role in the offense was more than minor but less than minimal. For this level of participation, § 3B1.2 authorizes a 3 level reduction.

*Downward Departure*

Section 5K2.12 authorizes a downward departure:

> If the defendant committed the offense because of a serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily, coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property, or similar injury resulting from the unlawful action of a third party or from a natural emergency. . . ."

This defense requires "an objective showing that a reasonable person would have been coerced under the particular circumstances" of Defendant's case. Defendant must also show that the coercion or duress caused her to commit the offense. *See, e.g., United States v. Cotto*, 347 F.3d 441, 446 (2d Cir. 2003) (internal citations and quotations omitted).

Defendant has a long history of emotional or mental problems, involving depression, anxiety, and obsessive-compulsive disorder. Defendant has received the majority of her mental health care from Dr. Meg Little through Psychiatric Services in Madison, Wisconsin. Defendant has undergone counseling and received prescribed medications, including Alprazolam, Ambien, Prozac, and Seroquel, from this physician since she was approximately fifteen years old.

Defendant is still under the care of a Dr. Little, who has submitted a written opinion regarding the Defendant's present mental illness.

As mentioned above, the Government and the Defense have stipulated to the following facts to which Chad Raby would have testified if called. Raby did not believe that he and Shannon were equals in this conspiracy. Shannon Fitzgerald was less culpable than he, Chad Raby, was. Shannon Fitzgerald, when asked to drive Chad Raby, to pick up Ecstasy in Chicago, Shannon was reluctant and expressed the desire to not to do it, the unwillingness not to do it. When met with this resistance from Shannon Fitzgerald, Raby persuaded her to go and lend him money.

Gail Fitzgerald, Defendant's third-party custodian, addressed the Court regarding Defendant's mental and emotional condition. Defendant's condition was manifested in high school as social phobia anxiety, which became exacerbated to the point where Defendant dropped out of college and was unable to leave her apartment without the prescribed medication for her agoraphobia. Specifically, Gail Fitzgerald stated:

> [B]ut when you were talking about medication, part of the agoraphobia is that when her prescription ran out she could not get herself to go to the pharmacy and pick up her medication. There were several times where the pharmacy would call me and leave a message on my answering machine while I was at work saying that she had a prescription and it needed to be picked up by such and such a day or insurance couldn't cover it any longer. You know, I'm always thinking that that's a horrible thing that she [could] take it and yet at the same time she couldn't get herself to get it.

Transcript, Nov. 6, 2003, at 29.

These circumstances, while not amounting to a complete defense to the charge against Defendant, are atypical and outside the "heartland" of cases embodying the conduct to which the

guidelines would otherwise apply. Here, Defendant met Raby, who was actively involved with the acquisition and sale of MDMA; and through his efforts, Defendant participated to a limited extent. Because of Defendant's mental illnesses, Raby was able to manipulate Defendant to this end. He provided pills for her use, which she used, presumably, to self-medicate her illness. She was unusually responsive to Raby's persuasion to participate in his illegal activities. Although not threatened with physical injury, the conduct of Raby as presented to Defendant involved a threat of mental and emotional injury of a similar nature. Under the present circumstances, Defendant's actions are found to be the result of coercion, as that word is used in § 5K2.12; and a downward departure of 2 levels is found, therefore, reasonable.

Dated: February 5, 2004

JOHN W. DARRAH
United States District Judge